# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-2723

CHRISTOPHER CORVODA

    Plaintiff,

v.

KRISTOPHER CZAJKOWSKI, in his individual capacity;

VANESSA MENDOZA, in her individual capacity;

GUNNAR FISK, in his individual capacity;

CITY OF COLORADO SPRINGS

    Defendants.

---

## COMPLAINT AND DEMAND FOR A JURY TRIAL

---

Plaintiff, Christopher Cordova, for his Complaint and Jury Demand, states and alleges as follows:

### THE PARTIES

1. Plaintiff Christopher Cordova is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

2. Defendant Kristopher Czajkowski is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Czajkowski is sued in his individual capacity as a police officer in the Colorado Springs Police Department.

1

3. Defendant Vanessa Mendoza is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Mendoza is sued in her individual capacity as a police officer in the Colorado Springs Police Department.

4. Defendant Gunnar Fisk is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Fisk is sued in his individual capacity as a police officer in the Colorado Springs Police Department.

5. The City of Colorado Springs a municipality in the state of Colorado. The Colorado Springs Police Department (CSPD) is a subdivision of the City of Colorado Springs.

## JURISDICTION AND VENUE

6. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Therefore, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331(a) and 1343, the First Amendment to the United States Constitution and over the parties pursuant to 28 U.S.C. § 1391(b) because this action arises from the commission of tortious acts within the State of Colorado, by residents of the State of Colorado. This Court has supplemental jurisdiction over Plaintiff's Colorado state law claims under 28 U.S.C. § 1367.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the District Court in and for the District of Colorado because the conduct complained of occurred within the District of Colorado.

## ALLEGATIONS

8. On the early morning of September 2, 2023, Mr. Cordova was walking through downtown Colorado Springs as the bars let out, filming and streaming that evening with a particular focus on capturing the interactions between police officers and the public.

2

9. Mr. Cordova is a First Amendment Auditor.

10. First Amendment Auditors are committed advocates for filming public interactions between police officers and the public.

11. At some point, several Colorado Springs officers, including all Defendants, responded to an individual who had been involved in a fight.

12. Several minutes later, Mr. Cordova, along with two other First Amendment Auditors, approached the location where Defendants and other officers were standing in order to film the police interactions.

13. Mr. Cordova stood approximately 10 feet away from any individual and no officer approached him.

14. When an ambulance arrived, it pulled up right next to Mr. Cordova, who was then standing in the middle of the vehicle on the driver's side.

15. Seeing this, Mr. Cordova walked around the police officers and other individuals and placed himself near the other two First Amendment Auditors.

16. Mr. Cordova placed himself next to a parked car, approximately 15 feet from the ambulance, 5 feet from any officer, and 20 feet away from any individual involved.

17. Throughout this entire time, Mr. Cordova never attempted to speak to any individual and never engaged in any conduct which could reasonably be interpreted as a use or threat of violence, physical force, physical interference, or obstacle.

18. Defendant Czajkowski, standing between the three individuals filming and the individuals who had been involved in a fight, demanded that the three people filming, including Mr. Cordova, walk to an area so far away that they would not be able to effectively film the police interaction.

19. Defendant Czajkowski threatened to charge these three individuals, including Mr. Cordova, with the crime of Interference if they did not move far away from the police.

20. At no point did any individual present, including Mr. Cordova, engage in any use or threat of violence, force, physical interference, or obstacle.

21. At no point did any individual present, including Mr. Cordova, in any way interfere or impair any police officer from any discharge of their police duties.

22. In response to Defendant Czajkowski's unlawful threat of arrest for Interference, Mr. Cordova told Defendant Czajkowski that Interference required a physical act.

23. Nonetheless, and without any basis, Defendant Czajkowski declared that all three individuals, including Mr. Cordova, were to be arrested for Interference.

24. Defendant Czajkowski gave commands to all three First Amendment Auditors to back up, which Mr. Cordova did.

25. Defendant Czajkowski then directed Defendant Mendoza to arrest Mr. Cordova.

26. Defendant Mendoza approached Mr. Cordova and placed him into handcuffs without incident.

27. Later, Defendant Mendoza wrote in her narrative in support of Mr. Cordova's charges that "Mr. Cordova decided to stand at the rear of the ambulance."

28. As Defendant Mendoza knew, this statement was false as Mr. Cordova was not standing near the rear of the ambulance. Instead, Mr. Cordova was standing by a parked car 15-20 feet away.

29. Defendant Czajkowski wrote in his narrative that Mr. Cordova had moved "directly next to the victims in this case and [was] blocking the open parking space."

30. This statement by Defendant Czajkowski was false.

31. Later, Defendant Czajkowski was sitting in his patrol vehicle with CSPD Officer Hengel talking about the potential charges.

32. Officer Hengel told Defendant Czajkowski that he didn't think it was obstruction "because did they physically do something to obstruct?"

33. Colorado Springs Municipal Code 9.3.101 provides as follows:

    Interference Prohibited: It is unlawful for any person to intentionally, knowingly or recklessly, by use or threatened use (with the present ability to carry out the threat) of violence, force or physical interference or obstacle, to obstruct, interfere with or impair any member of the Police Department, or any person duly empowered with police authority, while the official is in the discharge or apparent discharge of the person's duty.

34. Moments later, Defendant Fisk, in explaining that all of the individuals would be charged with Interference, said that Mr. Cordova's interference was "because they're out here videotaping us."

35. Defendant Czajkowski then signed a summons charging Mr. Cordova with Interference under Colorado Springs Municipal Code 9.3.101.

36. As all Defendants knew, Mr. Cordova had not engaged in any use or threatened use of "violence, force or physical interference or obstacle."

37. Additionally, all Defendants knew that Mr. Cordova had not interfered with any officer's discharge of their duties.

38. Nonetheless, Defendants supported and participated in and supported the charges being filed and pursued by the Colorado Springs City Attorney's office.

39. Ultimately, Mr. Cordova took the charge of Interference to trial.

40. Defendants Czajkowski and Mendoza both testified in support of the charges against Mr. Cordova.

41. After 30 minutes of deliberation, the jury returned a not guilty verdict.

Municipal Liability Claims

42. The Colorado Springs Police Department has an official policy that singles out First Amendment Auditors for special treatment if they are being arrested.

43. Under CSPD policy, as communicated through an email to CSPD officers, if a First Amendment Auditor specifically is arrested, they must be taken to the "POC" for fingerprinting and photographing.

44. Otherwise, officers use their discretion and do not always fingerprint and photograph individuals arrested for crimes.

45. However, CSPD policy specifically requires that First Amendment Auditors are to be treated differently and subjected to greater search and cataloging.

46. Presumably, this requirement is part of an effort to specifically target First Amendment Auditors for additional charges from other jurisdictions out of animus for their political activity in recording police officers.

47. Additionally, this policy appears designed to build a list in the possession of CSPD of people who engaged in protected activity, specifically filming police officers, for targeting purposes.

48. Pursuant to this official policy, Mr. Cordova was fingerprinted and photographed. Presumably, Mr. Cordova's association as a First Amendment Auditor is now documented on a Colorado Springs Police Department list.

<strong><u>CAUSES OF ACTION</u></strong><br><strong>COUNT I:</strong>

## C.R.S. 13-21-131 - Malicious Prosecution
(Defendants Czajkowski, Mendoza, and Fisk)

49. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

50. Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as law enforcement officers for the Colorado Springs Police Department at all times relevant to the allegations in this Complaint.

51. Defendants were "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

52. Defendants initiated a criminal case against Plaintiff for the charge of Interference.

53. Defendants provided false and misleading statements in support of such charges.

54. Defendant Czajkowski issued the charges and signed the probable cause statement knowing that it contained false and misleading information.

55. There was no probable cause for a charge of Interference against Plaintiff, as at no point did Mr. Cordova engage in conduct that amounted to use or threatened use of "violence, force, physical interference, or an obstacle."

56. Defendants pursued charges against and the arrest of Plaintiff out of malice.

57. Plaintiff prevailed at trial with a Not Guilty verdict.

58. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

59. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

60. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the State of Colorado.

## COUNT II:
### C.R.S. 13-21-131 - Free Speech Retaliation
(Defendants Czajkowski, Mendoza, and Fisk)

61. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

62. Plaintiff was engaged in protected activity when he was filming the police interaction.

63. Defendants were at all times "peace officers" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

64. The charges commenced by Defendants against Plaintiff were at least in part motivated by Plaintiff's protected activity of recording of officers and of public meetings.

65. Commencing a criminal case against an individual without probable cause would chill a reasonable individual from engaging in such protected activity in the future.

66. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

67. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

68. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the state of Colorado.

## COUNT III:
## C.R.S. 13-21-131 - Unlawful Arrest
(Defendants Czajkowski, Mendoza, and Fisk)

69. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

70. Defendants were at all times a "peace officer" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

71. Defendants each participated in Plaintiff's arrest.

72. Plaintiff's arrest was not supported by probable cause.

73. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

74. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

75. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the state of Colorado.

## COUNT IV:
## 42 U.S.C. 1983 - First Amendment
(Defendant City of Colorado Springs)

76. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

77. The Colorado Springs Police Department has an official policy which requires that CSPD police officers treat First Amendment Auditors differently than other members of the

9

public based on their association with other First Amendment Auditors and based on their protected political activity.

78. As a result of this policy, First Amendment Auditors are subjected to greater searches in an effort to obtain additional information in order to punish First Amendment Auditors for their protected conduct.

79. The basis for this disparate treatment is based on the viewpoint of First Amendment Auditors.

80. There is no compelling public need to subject individuals who record police officers to greater scrutiny on the basis of their viewpoints.

81. As a direct and proximate cause and consequence of Defendant's unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

82. Defendant's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

83. Defendant's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against each Defendant, and award him all relief allowed by law, including but not limited to the following:

A. All appropriate relief at law and equity;

B. Declaratory relief and other appropriate equitable relief;

C. Economic losses on all claims as allowed by law;

D. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

E. Punitive damages;

F. Attorneys' fees and the costs, including expert witness fees, on all claims allowed by law;

G. Pre-and post-judgment interest at the lawful rate; and

H. Any other appropriate relief at law and equity that this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 1st day of September 2025.

By:   /s/ E. Milo Schwab
E. Milo Schwab (47897)
Casey Peel (57430)
Ascend Counsel, LLC
2401 S. Downing Street
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co
casey@ascendcounsel.co
**ATTORNEYS FOR PLAINTIFF**