IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  25-cv-2723-CYC

CHRISTOPHER CORDOVA,

    Plaintiff,

v.

KRISTOPHER CZAJKOWSKI, in his individual capacity;
VANESSA MENDOZA, in her individual capacity;
GUNNAR FISK, in his individual capacity; and
CITY OF COLORADO SPRINGS,

    Defendants.

---

### OPPOSED MOTION TO DISMISS

---

Defendants, Officers Kristopher Czajkowski, Vanessa Mendoza, Gunnar Fisk and the City of Colorado Springs, by and through the Office of the City Attorney, respectfully move to dismiss the Complaint.

Pursuant to D.C.COLO.L.CIVR 7.1(a), the undersigned has conferred with counsel for Plaintiff. He is authorized to state that counsel is opposed to the relief sought herein.

    **I.**    **Introduction**

Routine and discretionary identification practices incident to an arrest have long been recognized as constitutional. Accordingly, a federal claim has not been plausibly alleged against the City. As for the state law claims, Plaintiff was arrested for physically interfering with officers, not because he exercised his First Amendment rights. Probable cause to arrest Plaintiff defeats the state law claims. The action should be dismissed in its entirety.

**II.     Standard of Review**

**A. Fed. R. Civ. P. 12(b)(5)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under the plausibility standard, allegations which are "merely consistent with a defendant's liability" are insufficient. *Id.* Equally insufficient are allegations based on "labels or conclusions 'and a formulaic recitation of the elements.'" *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1240 (D. Colo. 2018) (Arguello, J.) (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the motion to dismiss stage, "[t]he question [for the Court] is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).

**III.     Argument**

**A. The Court Should Consider the Body-Worn Camera Footage, the Guilty Finding of Sasha Cronick, Guilty Plea of Shane Logan and Police Reports of Officers Czajkowski and Mendoza**

Footage from the body-worn cameras ("BWC") of three officers clearly contradicts the allegations in the Complaint. The Complaint directly quotes two police reports, Exhibit G, Officer Kristopher Czajkowski's police report and Exhibit H, Officer Vanessa Mendoza's police report. ECF No. 1 at 4, ¶¶ 27, 29. The guilty plea of Shane Logan and mittimus order of Sasha Cronick are proper subjects of judicial notice. Collectively, the videos, reports and certified court documents should be considered for purposes of the Motion to Dismiss.

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But, the video "speak for [themselves]." *Scott v. Harris*,

2

550 U.S. 372, 378 n. 5 (2009). Video footage is central to the complaint and can be considered in ruling on a motion to dismiss when it clearly contradicts allegations in a complaint. *See Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019). In the Complaint, Plaintiff alleges, after an ambulance arrived, he moved from a location near the ambulance to the location "near the other two First Amendment Auditors[,]" ECF No. 1 at ¶ 15, which was "next to a parked car, approximately 15 feet from the ambulance, 5 feet from any officer, and 20 feet away from any individual involved." *Id.* at ¶ 16. The Complaint continues that "[t]hroughout this entire time, Mr. Cordova . . . never engaged in conduct which could reasonably be interpreted as . . . physical interference or obstacle." *Id.* at ¶ 17; *see also id.* at ¶ 21 ("At no point did any individual present, including Mr. Cordova, in any way interfere or impair any police officer from any discharge of their police duties."); ¶ 20 (similar allegation). Plaintiff also alleges Officer Czajkowski "demanded that the three people filming, including Mr. Cordova, walk to an area so far away that they would not be able to effectively film the police interaction." *Id.* at ¶ 18. "Nevertheless, and without any basis," the Complaint alleges, "[Officer] Czajkowski declared that all three individuals, including Mr. Cordova, were to be arrested for Interference." *Id.* at ¶ 23. The Complaint alleges the officers wrote false narratives of events in their reports. *Id.* at ¶¶ 27-30. In contrast and as depicted by the BWC, the three videographers stood near the victims and blocking the open parking space and, shortly thereafter, Plaintiff, in fact, stood near the ambulance. (Exhibit D, Body-Worn Camera Footage of Officer Kristopher Czajkowski, at 18:01-18:20).

Additionally, "[a] court need not accept as true allegations which contradict facts which may be judicially noticed by the court, or by documents referred to in the complaint." *Harper v. Guthrie*, No. 15-CV-082-J, 2015 WL 12915114, at *5 (D. Wyo. Oct. 20, 2015) (collecting cases). Shane Logan and Sasha Cronick were the other two videographers involved in the incident. They

3

engaged in materially identical conduct as Plaintiff. Mr. Logan's guilty plea and Ms. Cronick's finding of guilt after trial are properly considered as judicially noticed documents. *See Schnelle v. Cantafio*, 548 P.3d 1171, 1179 (Colo. App. 2024) (in the context of a malicious prosecution claim, "hold[ing] that previous rulings on summary judgment and directed verdict motions are among the factors that may be considered in determining the existence of probable cause.").

The police reports are quoted in the Complaint. ECF No. 1 at 4 ¶¶ 27, 29. The Complaint alleges Officer Czajkowski and Officer Mendoza made false statements in the reports. *Id.* The reports are central to the claim of malicious prosecution. *See, e.g.*, *Novitsky v. City Of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). They may be properly considered. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

The Complaint's allegations are contradicted by body-worn camera footage, Ms. Cronick's finding of guilt and Mr. Logan's guilty plea. The BWC videos, guilty plea, guilty finding and police reports should be considered when deciding the Motion to Dismiss.

**B. No Official Policy of Dissimilar Treatment Exists Within CSPD**

The Complaint alleges the Colorado Springs Police Department ("CSPD") has a policy which singles out "First Amendment Auditors for special treatment if they are arrested." ECF No. 1 at 6, ¶ 42. The Complaint alleges this alleged unlawful "special treatment" was fingerprinting and photographing incident to arrest. *Id.* at ¶ 43. The claim has not been plausibly alleged.

The Complaint does not quote language from the policy, identify the policy or include it in the Complaint or as an attachment. *See Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) ("A plaintiff must . . . identify a government's policy or custom that caused the injury." (internal quotation marks omitted)); *Sandberg v. Englewood, Colorado*, 727 F. App'x 950, 964 (10th Cir. 2018) (affirming dismissal of complaint that "never set[ ] out the text of any . . . policy.").

4

Instead, it claims the policy was "communicated through an email to CSPD officers" without identifying what was stated in the email, who authored it and when the email was sent. It provides no facts to support an inference that the email acted as a formal regulation, an official policy of the City or the official product of a policymaker. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (permitting a § 1983 against a municipality when "the action this is alleged to be unconstitutional implements or exercises a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."); *Pahls v. Thomas*, 718 F.3d 1210, 1236 (10th Cir. 2013) ("The Supreme Court has made clear that, for a discrimination claim rooted in the First Amendment, a plaintiff must show that a government official acted with discriminatory purpose." (internal quotation marks omitted)). The Complaint does not, as well, allege that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). The existence of a policy has not been plausibly alleged.

The Complaint claims the policy was unconstitutionally discretionary. But, "[t]he purpose requirement [of alleging a viewpoint-discriminatory claim] is demanding." *Pahls*, 718 F.3d at 1230. Consequently, Plaintiff "must show that the defendant's individual actions caused viewpoint discrimination to occur, and that those actions were taken *because of*, not merely in spite of, plaintiff['s] ['filming public interactions between police officers and the public', ECF No. 1 at 3, ¶ 10,] message." *Id.* at 1230-31 (cleaned up, alterations added; emphasis in original).

The routine booking practices of fingerprinting and photographing are constitutionally permissible once probable cause to effectuate an arrest has been established. *See Maryland v. King*, 569 U.S. 435, 461 (2013) ("[T]he Fourth Amendment allows police to take certain routine 'administrative steps incident to arrest—i.e., booking, photographing, and fingerprinting."

5

(cleaned up)). Routine and discretionary identification processes incident to arrest are well-established. *See id.* at 457 (describing the over a century-old custom of confirming identification through discretionary photography). As noted below, Plaintiff was arrested for Interference, not for recording officers. Simply because Plaintiff was fingerprinted and photographed after his arrest does not give rise to a viewpoint discrimination claim. *See Pahls*, 718 F.3d at 1235-36 ("Beyond a doubt, disparate impact alone is not enough to render a speech restriction content- or viewpoint-based."). The Complaint does not allege facts showing others arrested by CSPD for Interference were not subject to fingerprinting and photographing. *See McGuire v. Reilly*, 386 F.3d 45, 63 (1st Cir. 2004); *Pahls*, 718 F.3d at 1239 n. 10.

The sole federal claim does not plausibly allege a policy existed or "that the defendant acted for the purpose of discriminating on account of viewpoint." *Pahls*, 718 F.3d at 1238 (internal quotation marks omitted). The claim should be dismissed.

### C. Probable Cause Supported the Arrest

The state law claims asserting Malicious Prosecution, First Amendment Retaliation, Unlawful Arrest fail because the officers had probable cause to arrest Plaintiff.

"Section 13-21-131[, C.R.S.,] is similar to 42 U.S.C. § 1983 . . . [and] the Fourth Amendment of the United States Constitution is 'almost identical to article II, section 7 of the Colorado Constitution." *Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024). Like the *Woodall* court's approach to an excessive force claim brought pursuant to C.R.S. § 13-21-131, this Court can rely on federal jurisprudence in analyzing the state law claims.

####      i.      Probable Cause Was Present

A showing of probable cause defeats the asserted claims. *See Shrum v. Cooke*, 60 F.4th 1304, 1310 n. 3 (10th Cir. 2023) (a showing of a lack of probable cause required for a malicious

6

prosecution claim); *see also Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 645 (Colo. 1954) (same); *Neives v. Bartlett*, 587 U.S. 391, 404-08 (2019) (no probable cause generally defeats a retaliatory arrest claim); *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) ("An arrest must be supported by probable cause.").

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *Donahue v. Wilhongi*, 948 F.3d 1177, 1189 (10th Cir. 2020). "To determine whether an officer had probable cause for an arrest, [a court] examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *D.C. v. Wesby*, 583 U.S. 48, 56–57 (2018) (internal quotation marks omitted). "[A]n arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Id.* at 54 n. 2. Probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 57.

The officers, and particularly Officer Czajkowski, had probable cause to arrest Plaintiff. Interference pursuant to City Code § 9.3.101(B)[1] states:

> Interference Prohibited: It is unlawful for any person to intentionally, knowingly or recklessly, by use or threatened use (with the present ability to carry out the threat) of violence, force or physical interference or obstacle, to obstruct, interfere with or impair any member of the Police Department, or any person duly empowered with police authority, while the official is in the discharge or apparent discharge of the person's duty.

*Id.* Similarly, C.R.S. § 18-8-104(1)(a) states:

> person commits obstructing a peace officer, . . . emergency medical service provider . . . when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority . . . ; knowingly obstructs, impairs,

---

[1] A certified copy of City Code § 9.3.101 is attached as Exhibit I.

7

> or hinders the administration of medical treatment or emergency assistance by an emergency medical service provider or rescue specialist, acting under color of his or her official authority . . . .

*Id.*

Officer Czajkowski also had probable cause to arrest Plaintiff for the Failure to Desist or Disperse in violation of § 9.2.103[2], which states:

> It is unlawful for any person to intentionally, knowingly or recklessly fail or refuse to obey an order which:
>
> A. Is made by a peace officer while in the discharge or apparent discharge of the officer's duties; and
> B. Directs that person, or a group of which that person is a member, to desist from conduct or disperse from an area; and
> C. Is given at a time when that person individually or with others is participating in a course of conduct or is present in an area where the conduct or presence creates, maintains or aggravates an immediate substantial danger of damage or injury to persons or property or substantially obstructs the performance of any governmental function.

*Id.* (emphasis added).

As an ambulance arrived to treat a victim of an assault, Officer Czajkowski explained to the trio of uninvolved videographers, including Plaintiff, that officers were engaged in police activity and an individual was in need of medical treatment. (Exhibit D at 18:01-18:07). Officer Czajkowski provided clear orders for Plaintiff, Mr. Logan and Ms. Cronick to stand behind the ambulance. Over the course of approximately thirty-four seconds, Officer Czajkowski pointed out where to go and stated:

> You're going to move behind this ambulance or you're going to be arrested for interference. Move behind the ambulance. Move behind the ambulance. I'm not going to tell you one more time. You're going to go to . . . are all going to get arrested. Behind over here. Behind the ambulance. Ok, move. Move now. Ok, move now. You have five seconds to move this way over to this parking spot. Five, four, three, two, one. You're all under arrest now.

---

[2] A certified copy of City Code § 9.2.103 is attached as Exhibit J.

8

(*Id.* at 18:16-18:50). As Officer Czajkowski spoke with the videographers, the ambulance pulled up behind the trio. (*Id.* at 18:08-18:18). Officer Czajkowski provided substantial time for Plaintiff to comply. (*Id.* at 18:16-18:50). Plaintiff, dressed in a hat, a black tee shirt over a white long-sleeved shirt, moved from Officer Czajkowski's left to his right while the order was being given and never physically stood behind the ambulance. (*Id.* at 18:21-18:49); (Exhibit F, Body-Worn Camera Footage of Officer Joseph Hashimoto at 18:14-18:40). Plaintiff and the others did not comply with the order. (Exhibit D at 18:49-18:53; Exhibit E, Body-Worn Camera Footage of Officer Vanessa Mendoza at 9:27-9:45).

Plaintiff and the other two videographers stood between the ambulance and those in need of medical assistance. They defied a clear order. *See Dempsey v. People*, 117 P.3d 800, 811 (Colo. 2005) ("'[P]hysical interference' need not be 'physical contact,' and may include flight in disobedience of the officer's lawful order to stop."). Plaintiff and the others were "'an obstacle' or 'physical interference' to obstruct the officer[s'] performance of [their] duty." *Id.* at 810. Plaintiff's "*actions* [were] calculated in any appreciable degree to hamper or impede the police in the performance of their duty as they saw it." *Id.* at 811 (emphasis in original). "[T]he circumstances, viewed objectively, justif[ied] the arrest." *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1220 (10th Cir. 2020).

The conclusion is confirmed by Ms. Cronick's finding of guilt of City Code § 9.3.101 and Mr. Logan's admittance of guilt. (Exhibit M, Mittimus-Order of Confinement of Sasha Cronick); (Exhibit K, Guilty Plea); (Exhibit L, Summons Issued to Shane Logan). The three videographers stood side-by-side as Officer Czajkowski gave lawful orders and defied the orders. The guilty plea and finding of guilt provide additional support to the presence of probable cause. *See Schnelle*, 548 P.3d at 1179.

The Complaint alleges Officer Czajkowski falsely noted in his report that Plaintiff "had moved directly next to the victim in this case and [was] blocking the open parking space." (ECF No. 1 at 4, ¶ 29) (alterations in Complaint). The Complaint also alleges Officer Mendoza wrote in her report that "Mr. Cordova decided to stand at the rear of the ambulance. (*Id.* at ¶ 27). "In the case of a Fourth Amendment claim of falsified evidence, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). First, as discussed above, the statements were accurate. Second, no allegations suggest the officers encouraged or exerted influence over the prosecutor to place greater weight on their reports generally or these statements specifically. After all, "[w]ith respect to a § 1983 action for malicious prosecution, the principal player in carrying out a prosecution is not police officer but prosecutor." *Calvert v. Ediger*, 415 F. App'x 80, 83 (10th Cir. 2011) (cleaned up with internal quotation marks omitted). Third, even assuming *arguendo* they were not true, if they are stripped from the reports the probable cause determination does not change—probable cause existed to arrest Plaintiff for violation of City Code §§ 9.3.101, 9.2.103 and C.R.S. § 18-8-104(1)(a). Plaintiff physically interfered with police's ability to complete their investigation and medical professionals' attention to their duties, failed to follow police orders after ample warning and opportunity to comply. Probable cause supported his arrest.

  **ii. The Officers Did Not Act With Malice**

Malice, for purposes of alleging a malicious prosecution claim, "requires evidence of intent, not mere negligence." *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016). Malice "is any motive other than a desire to bring an offender to justice." *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) (citation omitted).

The officers did not falsify evidence. The BWC proves the accuracy of the challenged statement made by Officer Czajkowski. When Officer Czajkowski first advised Plaintiff and the others to give space to the victims, police and the soon-to-be-arriving medical providers, Plaintiff and the others were, in fact, near the victims and blocking the open parking stall. (Exhibit D at 18:01-18:06); (Exhibit F at 17:54-18:05).

As for the statement made by Officer Mendoza in her report, it, too, was an accurate description of where Plaintiff stood at one point in time. Plaintiff was standing next to the ambulance when it arrived. (*Id.* at 18:14). He continued to stand there while Officer Czajkowski advised the three individuals that they needed to move behind the ambulance. (Exhibit D at 18:13-18:21). Plaintiff moved from Officer Czajkowski's left (at approximately his ten o'clock) to his right and next to Ms. Cronick (at approximately Officer Czajkowski's two o'clock). (*Id.* at 18:13-18:27); (Exhibit F at 18:18-18:28); (Exhibit E at 9:30). At no point did Plaintiff move behind the ambulance after being ordered to do so. Officer Mendoza's reported statement was not a falsity.

Since neither Officer Czajkowski nor Officer Mendoza made false statements in their reports, they did not provide false evidence and did not act with malice. Additionally, the Complaint does explain how the alleged statements, if inaccurate, were anything more than negligent or inadvertent. *See Novitsky*, 491 F.3d at 1258-59. Both officers wore recording devices. The Complaint does not allege the officers destroyed, concealed or withheld the BWC created by the devices. Neither Officer Czajkowski nor Officer Mendoza falsified evidence. They did not act with malice.

### D. Officer Fisk Did Not Personally Participate in Plaintiff's Arrest

A "plaintiff must show the defendant personally participated in the alleged violation . . . ." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Officer Fisk is alleged to have made a

11

statement after Plaintiff's arrest. ECF No. 1 at 5, ¶ 34. He is not alleged to have participated in any aspect of the arrest. The claims against him should be dismissed. *See Novitsky*, 491 F.3d at 1254.

WHEREFORE, for the foregoing reasons, Defendants request this Honorable Court enter an order dismissing the claims against them with prejudice, and for any other relief this Court deems appropriate.

Respectfully submitted this 1st day of December, 2025.

OFFICE OF THE CITY ATTORNEY FOR
THE CITY OF COLORADO SPRINGS
Marc Smith, Acting City Attorney

*/s/ W. Erik Lamphere*
W. Erik Lamphere, Division Chief
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Phone: (719) 385-5909
Fax: (719) 385-5535
Email: erik.lamphere@coloradosprings.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE (CM/ECF)

   I hereby certify that on the 1st day of December, 2025, I electronically filed and served the foregoing **OPPOSED MOTION TO DISMISS** using the CM/ECF system, which will send notification of this filing to the following:

E. Milo Schwab (milo@ascendcounsel.co)
Casey Peel (casey@ascendcounsel.co)
*Attorney for Plaintiff*

                */s/ Eri Howard*
                Eri Howard, Legal Secretary