IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CHRISTOPHER CORVODA

    Plaintiff,

v.                                        Civil Action No. 1:25-cv-2723

KRISTOPHER CZAJKOWSKI, in his individual capacity;
VANESSA MENDOZA, in her individual capacity;
GUNNAR FISK, in his individual capacity;
CITY OF COLORADO SPRINGS

    Defendants.

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Christopher Cordova, by and through his counsel, Ascend Counsel, LLC, hereby responds to Defendants' Motion to Dismiss, and in support thereof, provides as follows:

### INTRODUCTION

Defendants' Motion to Dismiss largely fails to adhere to the appropriate standard under Fed. R. Civ. P. 12(b)(6) by seeking to contest the substance of the allegations contained in the Complaint rather than the plausibility of the claims they support. The allegations of Plaintiff's Complaint plausibly allege both the existence of a Colorado Springs Police Department ("CSPD") policy and dissimilar treatment under such policy, and that he was subjected to arrest without probable cause. For the reasons below, the Court should deny Defendants' Motion.

### STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6)[1] is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule

---

[1] While Defendants refer to "12(b)(5)" in their Motion, Plaintiff assumes that Defendants meant to refer to Fed. R. C. P. 12(b)(6). *See* Dkt. 16 at p. 2.

1

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## ARGUMENT

**A. The Court should not consider matters outside of the pleadings when ruling on Defendants' Motion to Dismiss**

Defendants heavily rely on extrinsic evidence in their Motion to Dismiss while ignoring the contents of the Complaint. While a court may consider extrinsic evidence on a motion to dismiss in certain circumstances, the extrinsic evidence offered here does not meet that standard.

Generally, the sufficiency of a complaint must rest on its contents alone. *See, e.g., Casanova v. Ulibarri,* 595 F.3d 1120, 1125 (10th Cir. 2010). There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007); (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (3) "matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322.

If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. *See* Fed.R.Civ.P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997). If

2

the court converts a 12(b)(6) motion to a motion for summary judgment, it must provide the parties "the opportunity to present to the court all material made pertinent to such motion by Rule 56." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

Here, Defendants offer three (3) separate types of extrinsic evidence, none of which are appropriate for the Court to consider. Plaintiff discusses each type of extrinsic evidence in turn.

> **a. The Court should not consider any bodyworn camera footage in ruling upon Defendants' Motion to Dismiss because the bodyworn camera footage is not referenced in the Complaint.**

The first group of extrinsic evidence that Defendants ask the Court to consider in their motion is the bodyworn camera of three Colorado Springs police officers present when Mr. Cordova was arrested. Defendants offer no argument for the consideration of this evidence based on the narrow exceptions under 10th Circuit case law. However, Defendants cannot make any such argument because the Complaint does not incorporate any bodyworn camera video, the Complaint does not reference any bodyworn camera video, and bodyworn camera video is not the type of evidence for which a court may take judicial notice.[2]

Defendants instead argue that the Court can rely upon bodyworn camera footage in deciding on their Motion to Dismiss "when it clearly contradicts allegations in a complaint." Dkt. 16 at p. 3. However, *Myers*, the case upon which Defendants base their argument, does not stand for that proposition. The 10th Circuit there stated, "[b]ecause this case was decided on a Rule 12(b)(6) motion, we accept all well-pleaded factual allegations in the complaint as true, and may consider audio and video recordings taken from the responding officers' body cameras, *which are referenced in the complaint*." *Myers v. Brewer*, 773 F. App'x 1032, 1035 n. 2 (10th Cir. 2019) (internal quotations and citation omitted) (emphasis added); Dkt. 16 at p. 3. The *Myers* Court

---

[2]*See Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1299 (10th Cir. 2025) (holding that police video is not subject to judicial notice).

3

considered the video because it was referenced in the complaint—one of the limited exceptions to the clear rule against courts considering extrinsic evidence at the motion to dismiss stage.

Further, the 10th Circuit has very clearly stated that courts cannot consider extrinsic contradictory evidence at the motion to dismiss stage, including bodyworn camera footage, explicitly declining to adopt the *only* basis upon which Defendants rely in support of the Court's consideration of their extrinsic bodyworn camera evidence. *See Fuqua*, 157 F.4th at 1299–1300 ("the officers ask us to adopt a Sixth Circuit rule allowing video evidence at the motion-to-dismiss stage when the video blatantly contradicts the complaint. … Once again, we reject the officers' invitation to consider the videos. For starters, our caselaw instructs us not to consider contradictory evidence on a motion to dismiss."). As the Court held in *Fuqua*, the "district court would have flouted [the 12(b)(6)] standard if it had compared the videos to the complaint's allegations." *Id*. at 1299.

Here, Defendants heavily cite to and rely upon extrinsic body worn camera footage in their Motion to Dismiss. *See generally* Dkt. 16. Because the videos are not referenced in the Complaint and cannot be considered in a motion to dismiss, Plaintiff addresses each of Defendants' arguments below without reference to the bodyworn camera footage.

    **b. The Court should not consider the Guilty Finding of Sasha Cronick or the Guilty Plea of Shane Logan because neither is relevant to the present case.**

While it is true that, "[i]n ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records," that is only the case "*if they have a direct relation to matters at issue.*" *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 742 (10th Cir. 2023) (internal quotations and citations omitted) (emphasis added). Moreover, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id*.

4

The documents Defendants are requesting the Court to consider are simply not relevant to this case and do not have a "direct relation to the matters at issue." *See id*. Rather, the documents are the product of tangential prosecutions. While two other unnamed First Amendment Auditors are mentioned in the Complaint, the extent of their specific conduct is not alleged, and for good reason—neither individual is a plaintiff in this case alleging wrongful conduct by Defendants.

Defendants offer one case in support of their request that this Court consider Ms. Cronick's guilty verdict and Mr. Logan's Deferred Judgment Plea Agreement. *See* Dkt. 16 at p. 4 (citing *Schelle v. Cantafio*, 548 P.3d 1171 (Colo. App. 2024)). While the *Schelle* court acknowledged that a court may consider previous rulings on summary judgment and directed verdicts, the basis of that opinion was based on the logic of issue preclusion. *Schnelle*, 548 P.3d at 1178. Here, issue preclusion simply does not apply . Plaintiff was not a party to the proceedings for Ms. Cronick nor Mr. Logan and had *no* opportunity to litigate the issues to which they were convicted or entered their plea deal. And the logic of the impropriety is abundantly clear—Plaintiff should not be precluded from making an argument based on the decisions or arguments of others. Indeed, while Ms. Cronick was convicted, Mr. Cordova was exonerated.

Moreover, probable cause is particular to each individual being arrested. *Maryland v. Pringle*, 540 U.S. 366, 366 (2003). "Particularized probable cause cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another." *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1028 (10th Cir. 2015) (internal quotations and citations omitted).

Here, Defendants are inviting the Court to accept as true—without basis in law or fact—that all three individual First Amendment auditors[3] referenced in the Complaint engaged in identical conduct. This is in spite of (1) the Complaint does not support this statement and (2) Mr. Cordova was exonerated at trial while Ms. Cronick was convicted. *See* Dkt. 1 at paras. 39, 41, 57. Defendants then ask the Court to rely on the assumed identical conduct of all three individuals, and the disposition of the charges for the two non-party individuals, to support a finding of probable cause for Plaintiff's arrest. This is improper. Defendants cannot rely on the disposition of cases of other individuals (particularly where the conduct is not in fact identical) to argue the existence of probable cause to arrest Plaintiff. Because the consideration of this extrinsic evidence is improper, and the conduct of the two unnamed First Amendment auditors is not relevant to the assessment of whether probable cause existed to arrest Plaintiff, Plaintiff addresses each of Defendants' arguments without reference to the same.

### c. The Court may not consider the official written narratives of Defendants Czajkowski and Mendoza.

Defendants have failed to put forth any argument as to why the narrative reports of Defendants Czajkowski and Mendoza are central to any of Plaintiff's claims. More importantly, Plaintiff's claim for Malicious Prosecution does not rest upon these written narratives, but instead is simply supported by the false statements contained therein. The consideration of extrinsic documents referenced in the Complaint is intended to preclude "a plaintiff with a deficient claim" from surviving "a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp,* 130 F.3d at 1385. Nothing in these reports is dispositive of Plaintiff's claim that he was arrested without probable cause, particularly when

---

[3] Plaintiff concedes that the two unnamed First Amendment auditors in the Complaint are Shane Logan and Sasha Cronick. The extent of each unnamed individual's specific conduct is not once mentioned in the Complaint, because their conduct is not relevant to Plaintiff's claims.

such statements were made after the arrest. Further, to plausibly allege malice, a plaintiff need only allege a lack of probable cause. *See* p. 15, *infra*.

If the Court is inclined to consider these written narratives, it is important to consider that Plaintiff has alleged that the statements referenced were falsehoods. Dkt. 1 at paras. 27, 30, 53–54. At this juncture, the Court is obligated to treat the allegations that such statements are false as true. *See Fuqua*, 157 F.4th at 1299 ("the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. In doing so, courts must assume the truth of the plaintiff's factual allegations") (internal quotations and citations omitted).

**B. Plaintiff has plausibly alleged the existence of an official policy of the Colorado Springs Police Department for his *Monell* claim.**

In order to state a claim for municipal liability under § 1983, "a plaintiff must show: (1) the existence of an official policy or custom (2) that directly caused the alleged constitutional violation." *Potter v. Johnson*, No. 25-8033, 2025 WL 2954557, at *4 (10th Cir. Oct. 20, 2025).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations and citations omitted). "Deliberate indifference is required only for municipal liability based upon a failure to adequately train or supervise. … Other claims require only the existence of a policy

and causation." *Epps v. City & Cnty. of Denver*, 588 F. Supp. 3d 1164, 1175 n. 4 (D. Colo. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (noting that the standard for a policy claim under *Monell* is deliberate *conduct* as opposed to deliberate indifference).

Here, Plaintiff has alleged the existence and the terms of a specific policy communicated via email to CSPD officers. While the email itself is not directly quoted[4]—and Plaintiff is unaware of any such precedent that requires the specific text be directly quoted in a complaint—Plaintiff has alleged that "[u]nder CSPD policy, as communicated through an email to CSPD officers, if a First Amendment Auditor specifically is arrested, they must be taken to the 'POC' for fingerprinting and photographing." Dkt. 1 at para. 43. The policy as alleged is one that is either "a formal regulation or policy statement," or a "decision of an employee with final policymaking authority." This allegation far surpasses the speculative and instead alleges with particularity both the exact substance of the policy and the means through which it was provided to officers. This is more than sufficient to plausibly allege the existence of this policy to permit Plaintiff to conduct discovery on such email and policy.

Defendants in part rely upon *Sandberg v. Englewood, Colorado*, 727 F. App'x 950 (10th Cir. 2018) in arguing that the specific text of policy had not been produced. However, the

---

[4] The email itself has not yet been obtained by Plaintiff, and, unless destroyed, is in the possession and control of Defendants. It is true that at this juncture, Plaintiff does not know who authored the email. The reason Plaintiff knows an email exists is because it is heard being referenced by officers at the scene of Plaintiff's arrest. Specifically, when Defendant Fisk is asked by another officer, "Why do you want to fingerprint and photograph 'em?," Defendant Fisk responds by saying, "I just thought that it was required that we do fingerprints and photographs…," at which point another officer interrupts and states, "that was an email that was sent out for any First Amendment auditors, if we are are charging them, we have to take them over to the POC for fingerprints…." The exchange demonstrated the existence of an email that held authority over patrol officers' decision-making when it came specifically to First Amendment auditors. This case is entering discovery, and the identity of the specific individual who authored the email detailing the policy should be able to be ascertained in short time.

plaintiff in *Sandberg* provided no specifics of a formal policy because they argued a different theory of liability, instead presenting a theory of "an informal custom and widespread practice." *Sandberg*, 727 F. App'x at 963.

However, should the Court find Plaintiff's allegations as they stand insufficient, Plaintiff requests leave to amend to specifically add an allegation stating that an officer at the scene of Plaintiff's arrest referenced the email stating that First Amendment auditors must be fingerprinted.

C. **Plaintiff has alleged viewpoint discrimination.[5]**

Even a facially constitutional policy can be unconstitutional when it is applied selectively based upon the viewpoint of someone's speech. *Pahls v. Thomas*, 718 F.3d 1210, 1238 (10th Cir. 2013). "When a law or policy, though facially legitimate, is selectively enforced or subject to exceptions, it may suggest that content or viewpoint discrimination is afoot." *Id*. "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

> [A] claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose. … When government officials target speech because of particular views taken by speakers on a subject, viewpoint discrimination is afoot.

---

[5] While Defendants' argument alleges that, "[t]he Complaint claims the policy was unconstitutionally discretionary," this is not a true statement. Dkt. 16 at p. 5. Plaintiff cannot discern why Defendants believe this was alleged, and Defendants did not provide a citation to the Complaint to assist Plaintiff in understanding what allegations this belief is based upon. *See id*. Plaintiff also does not allege in his Complaint that the routine booking practices, by themselves, are unconstitutional. Rather, the Complaint alleges that, while officers ordinarily are granted discretion to fingerprint and photograph arrestees, officers do not have that discretion when it comes specifically to First Amendment auditors. Dkt. 1 at para. 42–48. Plaintiff accordingly addresses the portion of Defendants' argument based on allegations in the Complaint.

> The purpose requirement is demanding, though. It requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group.

*Pahls*, 718 F.3d at 1230 (internal quotations and citations omitted). "[F]ilming the police performing their duties in public is protected under the First Amendment." *Irizarry v. Yehia*, 38 F.4th 1282, 1295 (10th Cir. 2022). "[V]ideorecording is unambiguously speech-creation, not mere conduct." *Irizarry*, 38 F.4th at 1289. (internal quotations omitted); *see also W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (recognizing recording a police encounter as speech creation).

Here, Plaintiff alleges that CSPD has a policy of treating First Amendment auditors differently because they are First Amendment auditors. First Amendment auditors are committed advocates for filming public interactions between police officers and the public. Dkt. 1 at para. 10. By alleging that CSPD had enacted a policy that targets First Amendment auditors specifically, Plaintiff has plausibly alleged that CSPD is targeting a specific type of speech creation which is undoubtedly based upon the "opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829. (Plaintiff is unaware of any such policy that would, for example, subject professional newscasters on cable television to the same policy of mandatory fingerprinting for the same or similar conduct).

### D. The Complaint sufficiently alleges a lack of probable cause for Plaintiff's arrest.

If this Court dismisses Plaintiff's *Monell* claim, it should nevertheless decline to rule on Plaintiff's state law claims for reasons of comity and federalism. Courts in this district routinely decline to exercise supplemental jurisdiction over claims under C.R.S. 13-21-131 for reasons of comity and federalism. *See Aguilera-Valdez v. Davenport*, 2025 WL 1555772, at *8 (D. Colo.

June 2, 2025); *Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1309 (D. Colo. 2025) *Armijo v. Reigenborn*, 2023 WL 8622709, at *7 (D. Colo. Dec. 13, 2023).

    a. **Probable Cause**

"Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quotations and citations omitted). "[P]robable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure." *Summers v. State of Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991).

While Defendants only pursued the municipal charge of Interference, Defendants argue the existence of probable cause for three different possible charges. *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) ("the probable cause inquiry is not restricted to a particular offense, but rather requires merely that officers had reason to believe that a crime—any crime—occurred"). Plaintiff addresses each of the charges Defendants have presented as it relates to the allegations in the Complaint.

    i. **Colorado Springs City Code § 9.3.101(B) and C.R.S. § 18-8-104(1)(a)**

Defendants argue probable cause to arrest Plaintiff under two highly similar laws—Colorado Spring's municipal law for Interference and Colorado's statute regarding obstruction:

> Interference Prohibited: It is unlawful for any person to:
>     [1] intentionally, knowingly or recklessly,
>     [2] by use or threatened use (with the present ability to carry out the threat) of violence, force or physical interference or obstacle,
>     [3] to obstruct, interfere with or impair any member of the Police Department, or any person duly empowered with police authority,

11

>   [4] while the official is in the discharge or apparent discharge of the person's duty.

Colorado Springs City Code § 9.3.101(B).

>   A person commits obstructing a peace officer [or] … emergency medical service provider … when,
>   [1] by using or threatening to use violence, force, physical interference, or an obstacle,
>   [2] such person
>   [a] knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority; …; [or]
>   [b] knowingly obstructs, impairs, or hinders the administration of medical treatment or emergency assistance by an emergency medical service provider or rescue specialist, acting under color of his or her official authority …

C.R.S. § 18-8-104(1)(a).

The obstruction statute "requires conduct that is of sufficient magnitude to 'obstruct, impair or hinder' enforcement of the officers' duty." *Dempsey v. People*, 117 P.3d 800, 810 (Colo. 2005). Mere remonstration is not enough. *Id*. at 811. The drafters of the obstruction statute, "exclude from the code's range, liability for 'nonviolent refusal to submit to arrest and such minor acts as running from a policeman or trying to shake free of his grasp.'" *Id*. at n. 14. "[A]ctual physical interference is not a prerequisite to conviction, as long as the suspect's *actions* are calculated in any appreciable degree to hamper or impede the police in the performance of their duty as they saw it." *Id*. at 811 (internal quotation and citation omitted) (emphasis in the original); *see also Kaufman v. Higgs*, 697 F.3d 1297, 1302 (10th Cir. 2012) (evaluating why Dempsey had had met the standard for obstruction and noting, "by the time Mr. Dempsey engaged in this obstructionist conduct, the officers had already lawfully detained him to cite him for violating a different statute, and thus had the lawful authority to keep him under control.").

Here, the allegations are that Plaintiff was standing away from officers while filming the scene, that he moved himself when the ambulance arrived to an area away from the ambulance and others involved in the incident being investigated, that he did not speak with other individuals until Defendant Czajkowski threatened arrest, and that he backed up further when told. Dkt. 1 at paras. 13–24. Plaintiff is unaware under what circumstances such allegations, when taken as true, support reasonable suspicion, let alone probable cause, for obstruction of either the officers or the medical professionals who had just arrived at the scene. There is no allegation that threats were made, nor do the allegations support a finding that his actions were calculated to impede, or did impede or impair, police or paramedic operations. Defendants' argument fails accordingly.

### ii. Colorado Springs City Code § 9.2.103

For ease, Plaintiff breaks the ordinance's elements as follows:

It is unlawful for any person to [1] intentionally, knowingly or recklessly [2] fail or refuse to obey an order which
[3]
    A. Is made by a peace officer while in the discharge or apparent discharge of the officer's duties; **and**
    B. Directs that person, or a group of which that person is a member, to desist from conduct or disperse from an area; **and**
    C. Is given at a time when that person individually or with others is participating in a course of conduct or is present in an area where the conduct or presence **creates, maintains or aggravates an immediate *substantial* danger of damage or injury to persons or property** or substantially obstructs the performance of any governmental function.

Colorado Springs City Code § 9.2.103 (emphasis added).

Plaintiff's allegations do include a demand by Defendant Czajkowski that Plaintiff walk far away from the scene. Dkt. 1 at para. 18 ("Defendant Czajkowski, standing between the three individuals filming and the individuals who had been involved in a fight, demanded that the three

13

people filming, including Mr. Cordova, walk to an area so far away that they would not be able to effectively film the police interaction."). However, the Complaint notes that Plaintiff had already placed himself outside of any area where his presence would present an obstacle. *Id*. at para. 16. ("Mr. Cordova placed himself next to a parked car, approximately 15 feet from the ambulance, 5 feet from any officer, and 20 feet away from any individual involved."). The Complaint further notes that Plaintiff complied with the order. *Id*. at para. 24 (Defendant Czajkowski gave commands to all three First Amendment Auditors to back up, which Mr. Cordova did.). There is no interpretation of the allegations, when inferences are drawn in favor of Plaintiff, which demonstrates that Plaintiff created, maintained, or aggravated an immediate danger of injury to those present, let alone a substantial danger. *See* § 9.2.103(C). Moreover, the 10th Circuit has found previously that simply being in the vicinity of paramedics administering care, without more, does not violate § 9.2.103 or create a "substantial danger":

> We also separately find Officer Pryor's 'order' was not given at a time when Ms. Cronick posed a substantial danger to anyone or was causing a substantial obstruction. Officer Pryor was standing in between her and the paramedics tending to the man. Ms. Cronick refused to give her apartment number and stated, "police harassment." Officer Pryor 'ordered' her to leave after she said she did not witness anything and only called 911. …
>
> We conclude clearly established law would have apprised the officers that Ms. Cronick's conduct fell outside the scope of the ordinance, such that there would not have been probable cause to arrest her for failure to desist or disperse. The officers could not have reasonably thought they were justified in arresting Ms. Cronick.

*Cronick v. Pryor*, 99 F.4th 1262, 1272 (10th Cir. 2024). Here, Plaintiff was not near the paramedics administering care, and Defendant Czajkowski was standing between them, just as in *Cronick*. Dkt. 1 at paras. 16, 18. Plaintiff further backed up when commanded by Defendant

14

Czajkowski. *Id*. at para. 24. Accordingly, Defendants' argument that there was probable cause to arrest Plaintiff in violation of § 9.2.103 fails.

### b. Malice

Defendants argue that Plaintiff has not sufficiently pleaded malicious intent. However, for a claim of malicious prosecution, "[a] court may infer malice if a defendant causes the prosecution without arguable probable cause." *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1063 (D. Colo. 2021); *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014). Plaintiff has sufficiently pleaded that Defendants Czajkowski and Mendoza caused the prosecution of Plaintiff without probable cause. Dkt. 1 at paras. 12–38, 40, 52–56. Accordingly, Plaintiff has plausibly alleged malice for the purposes of his malicious prosecution claim.

### E. Dismissal of Defendant Fisk

Plaintiff concedes that the allegations as they stand against Defendant Fisk do not support the claims against him. Plaintiff agrees to dismiss Defendant Fisk from this matter.

### **CONCLUSION**

WHEREFORE, for the aforementioned reasons, Plaintiff requests that the Court deny Defendants' Motion to Dismiss.

In the alternative, should the Court find it necessary and in the interests of justice to add an additional allegation, Plaintiff requests that the Court grant leave to amend for the sole purpose of adding a single allegation to the Complaint, to be inserted immediately following paragraph 43 to become the new paragraph 44, which would state:

> 44. This email was discussed and relied upon by officers at the scene of Plaintiff's arrest, and was referenced as dictating that fingerprinting and photographing was a mandatory practice when charging First Amendment auditors specifically.

Respectfully submitted this 22nd day of December 2025.

s/ E. Milo Schwab
E. Milo Schwab, #47897
Ascend Counsel, LLC
1 Broadway, Suite B210
Denver, CO 80203
(303) 888-4407
milo@ascendcounsel.co

ATTORNEY FOR PLAINTIFF
