IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  25-cv-2723-CYC

CHRISTOPHER CORDOVA,

    Plaintiff,

v.

KRISTOPHER CZAJKOWSKI, in his individual capacity;
VANESSA MENDOZA, in her individual capacity;
GUNNAR FISK, in his individual capacity; and
CITY OF COLORADO SPRINGS,

    Defendants.

---

**REPLY TO RESPONSE TO MOTION TO DISMISS**

---

Defendants, Officers Kristopher Czajkowski, Vanessa Mendoza, Gunnar Fisk and the City of Colorado Springs, by and through the Office of the City Attorney, respectfully reply to the response to the Motion to Dismiss.

**I. Argument**

**A. No Express Policy of Viewpoint Discrimination Exists Within the City**

    **1. The Complaint Fails To Include, Quote Or Reference The Policy**

When, as here, an official policy or regulation is alleged to have caused an infringement of a constitutional right, the pleading practice is straightforward—the formal policy or regulation must be identified or located. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) ("Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those

officials whose acts may fairly be said to be those of the municipality."); *Est. of Kowalski v. Shrader*, No. 21-CV-00827-NYW, 2022 WL 19422, at *15 (D. Colo. Jan. 3, 2022) ("To raise a deliberate indifference *Monell* claim based on the existence of an official policy, a plaintiff should identify and set out the text of that policy." (cleaned up)); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("The Supreme Court observed in *Brown* that when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question."). Plaintiff's inability to specifically quote, include, describe, or reference the alleged offending policy reflects the failure to allege the existence of a formal policy or regulation.

The Response seeks to distinguish *Sandberg v. Englewood, Colo.*, 727 F.App'x 950 (10th Cir. 2018) by arguing the plaintiff, there, sought to allege "an informal custom and widespread practice[.]" (ECF No. 21 at 8-9). The Response does not explain how this distinction, if there is one, helps overcome the challenge. First, while the plaintiff in *Sandberg* alleged "an informal custom and widespread practice[,]" *id.* at 963, the Tenth Circuit spoke directly to the alternative theory of alleging an unlawful express policy. *Id.* at 964. Specifically, it found, "despite claiming to *'specifically allege' the policy* or custom that Englewood and its official had in place, Sandberg's complaint never sets out the text of any Englewood policy." *Id.* at 964 (emphasis added; internal citation omitted). At bottom, the Tenth Circuit was critical of the failure to include the policy regardless of the *Monell* theory of liability. Second, the Response does not explain how the failure to set out the text of a policy when an express policy theory is advanced is less problematic than failing to set out the text for purposes of an unlawful custom. If anything, the opposite is true: when an informal custom is alleged to exist, the failure to include text carries less significance than when liability hinges entirely on the express language of a purportedly

2

unconstitutional policy. In the former instance, a custom is not described in policy or regulation. Instead, an unlawful custom "amounts to a widespread practice that, *although not authorized by written law or express municipal policy*, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (internal quotation marks omitted; emphasis added). In the latter instance, the lawfulness and very existence of the policy rises or falls with its language. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1240 n. 44 (10th Cir. 2020) ("The 'official policy' at issue in *Monell* is an example of a facially unlawful policy."); *Pahls v. Thomas*, 718 F.3d 1210, 1234-35 (10th Cir. 2013) (reviewing the policies of the Secret Service and a sheriff's office in deciding a viewpoint discrimination claim). The failure to include the text is more problematic, not less, when an unlawful express policy is alleged. Without the text, the Complaint's allegations are conclusory. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (finding "cost-cutting policy allegations lack[ed] specific facts.").

A systemic pattern of behavior to support an inference of the existence of a policy cannot be gleaned from the Complaint. *See Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020) (dismissing a complaint when "Plaintiff's complaint repeatedly states that the individual defendants acted in accordance with an official City of Lakewood policy but fail[ed] to identify this purported policy and fails to draw a connection between this policy and the individual defendants' actions." (internal citations omitted)). The Complaint does not allege, and the Response does not argue, that the purported practice of fingerprinting and photographing occurred at other times.

Finally, the Response does not explain how the alleged policy was the final product of an authorized policymaker or legislative body. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481

3

(1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). It relies, instead, on an alleged email of an unknown source and origin, sent at an unknown time. Nor does it explain how the City and its policymakers acted with deliberate indifference in developing and instituting the policy. *See Hinkle*, 962 F.3d at 1241. In sum, the Complaint fails to plausibly allege a constitutionally deficit policy. It must be dismissed.[1]

### 2. The City Did Not Act with Viewpoint-Discriminatory Purpose

To plausibly state a claim, Plaintiff is required to shoulder a "demanding" burden to show that "the defendant acted with a viewpoint-discriminatory purpose." *Pahls*, 718 F.3d at 1230; *id.* at 1238 ("Purposeful discrimination requires more than intent as awareness of consequences . . . [and] if the evidence shows only that a defendant is aware of disparate treatment of two similarly situated groups—but nothing more—then a § 1983 or *Bivens* claim for viewpoint discrimination must fail as a matter of law."); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("The government's purpose is the controlling consideration."). Plaintiff fails to carry his burden. The Complaint alleges a conclusion that the City "targets" and "singles out First Amendment Auditors for special treatment if they are arrested[,]" ECF No. 1 at 6, without providing factual support for the conclusion. The Complaint does not reflect that videographers, generally, or Plaintiff, specifically, who were "committed advocates for filming public interactions between police officers and the public[,]" ECF No. 1 at 3, ¶ 10, were treated differently by being subjected to fingerprinting and photographing when others facing a charge for Interference were not subjected to the same booking procedure. Nor does the Complaint allege "First Amendment Auditors"

---

[1] The Response improperly seeks leave to amend the Complaint. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.").

arrested for other crimes face the identification procedures while others, who did not share the viewpoint, avoided similar processing. The Complaint is devoid of factual allegations reflecting that the City "adopted a regulation because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. It has not alleged "additional evidence—direct or circumstantial—that the defendant acted for the purpose of discriminating on account of viewpoint." *Pahls*, 718 F.3d at 1238. The Complaint fails to allege a discriminatory policy claim against the City.

**B. Outside Evidence is Properly Considered When Assessing Probable Cause**

Determining whether probable cause existed to support the charge of Interference boils down to whether Plaintiff physically obstructed the officers' and paramedics' ability to carry out their duties. In Plaintiff's curated recitation of events, he never stood in the way and was always compliant. *See*, *e.g.*, (ECF No. 1 at 4, ¶¶ 21, 23). This is belied by the body-worn camera ("BWC") footage, guilty finding, plea of the two other involved videographers, and police reports.

**1. The Police Reports Were Referenced In The Complaint**

The Complaint references and quotes from the police reports of Officers Czajkowski and Mendoza. (ECF No. 1 at 4, ¶ 27) (Officer Mendoza); (*Id.* at 4, ¶ 29) (Officer Czajkowski). They are central to claims against the officers, generally, and, specifically, the claim for malicious prosecution. (*Id.* at 4, ¶¶ 28, 30). The reports are properly considered. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Downplaying their centrality and significance, the Response argues the reports are "simply support[ive]" of the assertion that the officers made false statements about the existence of probable cause. (ECF No. 21 at 6). The Response cites no positive authority for the proposition that a plaintiff can rely on cherry-picked references and quotes from a report, on one hand, *see*, *e.g.*, (ECF No. 1 at 7, ¶ 53) ("Defendants provided false and misleading statements in support of

5

such changes."), and ignore them when the plausibility of the asserted claims are questioned, on the other. Plaintiff cannot have it both ways. The quoted portions of the reports allow for consideration of the entire reports. They are the central question at issue: whether Plaintiff physically interfered with officers and paramedics in the discharge of their duties. *Compare* (*Id.* at 4, ¶ 27) ("'Mr. Cordova decided to stand at the rear of the ambulance.'"); (*Id.* at ¶ 29 ("Mr. Cordova had moved 'directly next to the victims in this case and [was] blocking the open parking space.'" (alterations in Complaint)) *with* (ECF No. 16-9 (City Code § 9.3.101)); C.R.S. § 18-8-104(1)(a). The Response does not question the authenticity of the reports. They are properly considered.

**2. The Guilty Finding And Plea Are Subject To Judicial Notice**

Plaintiff does not contest the authenticity of Mr. Logan's guilty plea and Ms. Cronick's guilty finding. Nevertheless, Plaintiff seeks to distance himself from the other two videographers in his Response by arguing probable cause is an individual assessment. His complaint, though, intentionally lumps his actions with those of the other two videographers and claims complete innocence of the group. (ECF No. 1 at 3, ¶¶ 12, 15, 18; 4, ¶¶ 23-24) (describing the uniformity of the videographers' conduct); (*Id.* at 4, ¶ 21) (claiming the innocence of the group by stating, "[a]t *no* point did *any* individual present, including Mr. Cordova, in *any* way interfere or impair any police officer from any discharge of their police duties." (emphasis added)); (*Id.* at 4, ¶ 20) (similar). Probable cause may be found to support the arrest of a group without an individualized assessment. *See D.C. v. Wesby*, 583 U.S. 48, 57-60 (2018) (assessing probable cause to arrest 16 partygoers collectively and stating "[t]he totality of the circumstances requires courts to consider the whole picture." (internal quotation marks omitted)). The guilty plea and guilty finding are indicative of probable cause to support Plaintiff's arrest when his complaint alleges the three

6

videographers acted in unison and the other two were guilty of the common charge. *See Schnelle v. Cantafio*, 548 P.3d 1171, 1179 (Colo. App. 2024). The court records may be considered.

### 3. The BWC Video Is Central To The Complaint

The BWC video is central to the Complaint and indisputably authentic. The videos clearly contradict and utterly discredit Plaintiff's selective version of events. Plaintiff's curated version should not be left to stand.

The Response relies heavily on *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288 (10th Cir. 2025) to argue the videos should not be considered. (ECF No. 21 at 3-4). In *Fuqua*, the Tenth Circuit declined to find that dash cam and BWC footage were proper subjects of judicial notice. *Id.* at 1298-99. The Court found that the district court did not abuse its discretion by refusing to consider the videos. *Id.* at 1299. Importantly, it did not go a step further and suggest a district court would abuse its discretion if BWC videos were considered in a different matter. After all, the *Fuqua* court made a point to find the submitted videos did not blatantly contradict or utterly discredit the complaint. *Id.* at 1299-1300. Additionally, as noted by the dissent, the Court did not take up the question of whether the videos were central to the complaint. *See id.* at 1307 ("To be sure, our circuit has not yet squarely held that videos central to Plaintiff's claims may be considered at the Rule 12(b)(6) stage, especially if they were not referenced in the complaint." (Tymkovich, dissenting)). Centrality is a categorical exception, separate and apart from judicial notice, to the prohibition against consideration of outside evidence. *Id.* at 1297. It applies here. On two occasions, the Complaint quotes officers to discredit the probable cause determination. (ECF No. 1 at 5, ¶¶ 32, 34). The direct quotes can only be captured by the BWC recordings. *See, e.g.*, (ECF No. 16-7, Officer Czajkowski's BWC, at 47:53-47:57). They are referred to by the Complaint and are central to the suit.

Unlike *Fuqua*, Plaintiff makes sweeping factual assertions which are blatantly contradicted and utterly discredited by the BWC footage. According to the Complaint, "Mr. Cordova . . . *never* engaged in *any* conduct which could reasonably be interpreted as . . . physical interference, or obstacle." (ECF No. 1 at 3, ¶ 17); *see also* (*Id.* at 4, ¶ 23 "Nonetheless, and *without any basis*, Defendant Czajkowski declared that all three individuals [were under arrest]." (emphasis added)). The BWC videos tell a different story. The videos show Plaintiff standing in the path between the ambulance and the victims. (ECF No. 16-4 at 18:15-18:20). Plaintiff then moves and stands next to Ms. Cronick while Officer Czajkowski warns the trio of their likely arrest if they continue to fail to comply with commands. (*Id.* at 18:21-18:39). At no point did Plaintiff move to the area where Officer Czajkowski commanded the videographers to go. *See*, *e.g.*, *Rodriguez v. Chavez*, No. 12-CV-01071-PAB-MJW, 2015 WL 5174226, at *7 (D. Colo. Sept. 3, 2015) (finding probable cause for Inference under Denver municipal code when individual failed to comply with multiple orders to show hands). The allegations in the Complaint are blatantly contradicted by the videos. The videos should be considered.

**C. Probable Cause Supported The Arrest**

If the videos are considered, the officers had probable cause to arrest Plaintiff. The Response does not direct attention to anything captured on video which would call the conclusion into question.

If the videos are not considered, probable cause was still established. The ambulance pulled "right next to Mr. Cordova . . . ." (ECF No. 1 at 3, ¶ 14). Plaintiff "walked around the police officer and the other individuals and placed himself near the other two First Amendment Auditors." (*Id.* at 3, ¶ 15). Officer Czajkowski warned the videographers. (*Id.* at 4, ¶ 19). The trio did not move to the location identified by Officer Czajkowski. (*Id.* at 4, ¶ 24) (only stating that Plaintiff backed

8

up some unknown distance). Mr. Logan and Ms. Cronick were found guilty of Interference. (ECF No. 16-11 through 16-13). The Complaint does not indicate Plaintiff acted differently than Mr. Logan or Ms. Cronick, or complied with the order. Probable cause existed to arrest Plaintiff.

**D. The Response Fails to Argue the Lack of Arguable Probable Cause**

Malice "requires intentional or reckless disregard of the truth[.]" *Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010). "Malice may be inferred if a defendant causes the prosecution without arguable probable cause." *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* at 1141; *see also Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) ("Arguable probable cause exists where a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." (internal quotation marks omitted; emphasis in original)). The Response does not argue that the officers lacked arguable probable cause. (ECF No. 21 at 15). The officers had probable cause and arguable probable cause for Plaintiff's arrest. To the extent probable cause is not found, Plaintiff is not entitled to the presumption of malice because he has not argued the absence of arguable probable cause. The officers did not act with intentional or reckless disregard for the truth. They did not act with malice.

**E. Plaintiff Agrees that Officer Fisk Should Be Dismissed From The Suit**

Plaintiff has no objection to the dismissal of Officer Fisk from the action. *Id.* Accordingly, all claims against Officer Fisk (Claims No. 1-3) should be dismissed.

9

WHEREFORE, for the foregoing reasons, Defendants request this Honorable Court enter an order dismissing the claims against them with prejudice, and for any other relief this Court deems appropriate.

Respectfully submitted this 12th day of January, 2026.

OFFICE OF THE CITY ATTORNEY FOR
THE CITY OF COLORADO SPRINGS
Marc Smith, Acting City Attorney

*/s/ W. Erik Lamphere*
W. Erik Lamphere, Division Chief
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Phone: (719) 385-5909
Fax: (719) 385-5535
Email: erik.lamphere@coloradosprings.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE (CM/ECF)**

   I hereby certify that on the 12th day of January, 2026, I electronically filed and served the foregoing **REPLY TO RESPONSE TO MOTION TO DISMISS** using the CM/ECF system, which will send notification of this filing to the following:

E. Milo Schwab (milo@ascendcounsel.co)
Casey Peel (casey@ascendcounsel.co)
*Attorneys for Plaintiff*

                */s/ Eri Howard*
                Eri Howard, Legal Secretary

11